## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2019, 10:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher L. Clerc
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jonathan D. Taylor,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 28, 2019

Court of Appeals Case No.
18A-CR-2306

Appeal from the Bartholomew
Circuit Court

The Honorable Kelly S. Benjamin,
Judge

Trial Court Cause No.
03C01-1712-F2-6997

**Robb, Judge.**

# Case Summary and Issue

[1] Jonathan Taylor pleaded guilty to burglary, a Level 4 felony, and the trial court sentenced him to eight years executed in the Indiana Department of Correction. Taylor appeals his sentence, presenting the sole issue of whether the trial court abused its discretion in sentencing him. Concluding the trial court did not abuse its discretion, we affirm.

# Facts and Procedural History

[2] On December 19, 2017, Daniel Butler and Rachel Hiatt were at their residence in Columbus, Indiana, when two men kicked in the door and entered their home. The men referred to each other as "Little John" and "T.Y." Appellant's Appendix, Volume 2 at 41. Butler had never seen either of the men before, but Hiatt knew T.Y. "Little John" was later identified as Taylor.

[3] Taylor instructed T.Y. to take certain items from the house and T.Y. took a computer, two televisions, golf clubs, cell phones, purses, and "other items belonging to [Butler] and [Hiatt]." *Id.* During the incident, Taylor pointed a handgun at Butler and Hiatt and at one point, he put the gun to Butler's temple and told Butler that he could shoot or "pistol whip" him. *Id.* Taylor had also pulled the magazine from the firearm to show Butler that the firearm was loaded.

[4] After the home invasion, the police received a report of a possible drunk driver near 3rd Street and Central Avenue. When police located the vehicle, it was

parked in front of a home opposite the Centra Bank on 7th Street. Taylor, T.Y., and a woman named Breanna Meier were in the vehicle and police discovered "items later determined to be items taken from the home of [Butler] and [Hiatt]." *Id*. at 42.

[5] In an interview with the police, Taylor admitted to being present during the home invasion, burglary, and armed robbery at Butler and Hiatt's home; however, he claimed he was "only assisting T.Y." and that the gun used was a "little BB gun[.]" *Id*. at 43. After the interview, Taylor was placed under arrest.

[6] On December 27, the State charged Taylor with the following: Count 1, burglary, a Level 2 felony; Count 2, aiding, inducing, or causing burglary, a Level 2 felony; Count 3, armed robbery, a Level 3 felony; Count 4, aiding, inducing, or causing armed robbery, a Level 3 felony; Count 5, armed robbery, a Level 3 felony; and Count 6, aiding, inducing, or causing armed robbery, a Level 3 felony. *See id*. at 81-87. On July 16, 2018, Taylor pleaded guilty to burglary, a Level 4 felony, and the State agreed to dismiss the remaining charges. As part of the plea agreement, the parties agreed to a sentencing cap of ten years.

[7] In its sentencing order, the trial court identified Taylor's criminal history, previous probation violations, the facts and circumstances of the offense, and the benefit of the plea offer as aggravating circumstances. Appealed Order at 1. The trial court found two mitigating circumstances, namely Taylor's "lapse of criminal activity during a period of time that he had employment" and that he

has a "support system but did not take advantage of that before committing the offense." *Id*. The trial court sentenced Taylor to eight years at the Department of Correction. Taylor now appeals.

# Discussion and Decision

## I. Propriety of Taylor's Sentence

[8] Sentencing decisions rest within the trial court's discretion and are afforded considerable deference. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). Accordingly, we review sentencing decisions for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). A trial court abuses its discretion when its decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*.

[9] There are several ways in which a trial court can abuse its discretion in sentencing:

> (1) failing to enter a sentencing statement, (2) entering a sentencing statement that explains reasons for imposing the sentence but the record does not support the reasons, (3) the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or (4) the reasons given in the sentencing statement are improper as a matter of law.

*Phelps v. State*, 24 N.E.3d 525, 527 (Ind. Ct. App. 2015).

Here, Taylor claims the trial court erred by failing to consider his guilty plea as a "significant mitigating factor supported by the record." Brief of Appellant at 7. Specifically, he contends his guilty plea should be been afforded "some mitigating weight" as he took responsibility for his actions. *Id*. at 8. "[A]n allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is not only supported by the record but also that the mitigating evidence is significant." *Anglemyer*, 875 N.E.2d at 220-21.

In *Anglemyer*, our supreme court recognized that "the significance of a guilty plea as a mitigating factor varies from case to case." *Id*. at 221. And it has explained that a guilty plea is not always a significant mitigating circumstance:

> For example, a guilty plea may not be significantly mitigating when it does not demonstrate the defendant's acceptance of responsibility or when the defendant receives a substantial benefit in return for the plea. . . .
>
> [In this case, the defendant] was exposed to a potential maximum sentence of twenty-eight years. In exchange for his plea, [he] received the benefit of a twelve-year reduction in sentence. This alone was a substantial benefit.

*Id.* (citations omitted). Thus, a guilty plea may be less significant when it is merely a pragmatic decision. *Id*.; *see also Edrington v. State*, 909 N.E.2d 1093, 1101 (Ind. Ct. App. 2009), *trans. denied*. The significance of a guilty plea may also be reduced if there is substantial admissible evidence against the defendant, the plea was made on the eve of trial, or if the circumstances indicate the

defendant is not taking responsibility for his or her actions. *Caraway v. State*, 959 N.E.2d 847, 853 (Ind. Ct. App. 2011), *trans. denied*.

[12]     Taylor has failed to demonstrate that his guilty plea is a significant mitigating factor supported by the record. To the contrary, a review of the record reveals Taylor's guilty plea is of little significance as a mitigating circumstance. First, Taylor received a substantial benefit by accepting the State's plea agreement. As the trial court acknowledged at the sentencing hearing, Taylor received a "big benefit from going to a Level 2 Felony down to a Level 4. That is a switch from a max of 30 years to 12." Transcript, Volume 2 at 38. Thus, Taylor's possible sentence exposure was reduced by eighteen years. *See Anglemyer*, 875 N.E.2d at 221 (noting that a reduction in sentencing exposure is "a substantial benefit"). Second, although Taylor ultimately pleaded guilty to Level 4 burglary, the record reveals that he did not take responsibility, continued to blame his co-defendant, and demonstrated a lack of remorse. At the sentencing hearing, the trial court engaged in the following colloquy with Taylor:

> [Court]:     So who put the gun to [Butler's] head?
>
> [Taylor]:    Nobody. There was no gun that was . . . he says that I put a gun. He also stated that I took him upstairs. He also stated that I threatened to pistol-whip him or do things of that and where I'm from we do things like that. But if you don't know me, have never met me, but she states how you know that that's where I'm from and that's what I do.
>
> [Court]:     Then what the heck are you remorseful for?

[Taylor]:     I'm remorseful. . .

[Court]:      Because I'm looking through these facts and every single fact, although you are fuzzy on it because you start out with I'm fuzzy, and then you go through and list every single fact that looks bad and say either it didn't happen or the other guy did it. I was just there to get 50 bucks. So what are you remorseful for?

[Taylor]:     For even going there in the beginning.

[Court]:      Well, there's nothing criminal about going to someone's house. So what are you remorseful for?

[Taylor]:     I'm remorseful for what happened after the stealing of property; for the altercation between us.

[Court]:      Which you didn't do?

[Taylor]:     Yeah, I didn't do it.

[Court]:      Okay, so what are you remorseful for?

[Taylor]:     But since I have pled guilty to the fact of a Level 4 Burglary.

[Court]:      For what? You're saying you didn't do anything.

[Taylor]:     For entry of the residence. I did enter the residence; I did go in; I did have an altercation between them.

        \* \* \*

> [Court]:     Well, that sounds like you're trying to defend yourself or it was just a mutual combat. That doesn't sound like you're guilty of anything. So what are you remorseful for?

> [Taylor]:     For being there; for being part of the burglary. For even putting myself in that . . . for even being in their home. I should have never walked inside. I should have never even continued to go on furthermore.

Tr., Vol. 2 at 28-29. The trial court commented on Taylor's lack of remorse, stating:

> [W]hen I say I think you have a lack of remorse, I believe that to be true. When I try to say what are you sorry for; just being there. Even in the PSI, ultimately [Taylor] reports the incident is his fault; that he is remorseful. But [Taylor] had gone through a whole paragraph of saying what [he] did not do. . . .

*Id.* at 39. Given Taylor's lack of remorse and failure to accept responsibility, the significance of his guilty plea is greatly reduced, especially in relation to the substantial benefit he gained.

[13]    Finally, given Taylor's lack of remorse, the evidence against him, and his possible sentence exposure, his guilty plea is more likely a pragmatic decision than an acceptance of responsibility. Based on our review of the record, we cannot agree with Taylor's assertion that his guilty plea is a significant mitigating circumstance. *See Anglemyer*, 875 N.E.2d at 220 (a defendant must

"establish that the mitigating evidence is not only supported by the record but also that the mitigating evidence is significant.").[1]

# Conclusion

For the foregoing reasons, we conclude the trial court did not abuse its discretion in sentencing Taylor. Accordingly, we affirm.

Affirmed.

Riley, J., and Kirsch, J., concur.

---

[1] In his brief, Taylor frames the issue as whether the trial court abused its discretion when it found his guilty plea an aggravating factor and asks this court to "reweigh the aggravating and mitigating circumstances independently[.]" Br. of Appellant at 8. However, his argument focuses on the mitigating weight he believes should have been afforded to his guilty plea. Taylor fails to explicitly argue that this finding was an improper or invalid statutory consideration in imposing his sentence under Indiana Code section 35-38-1-7.1 and fails to provide any support for the notion that a guilty plea cannot be an aggravating factor. Thus, Taylor has waived any potential argument in this respect. *See* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on[.]").